COLBERT ET AL., APPELLANTS, *v.* CONEY ISLAND, INC., APPELLEE.

(No. 7814—Decided January 11, 1954.)

*Mr. Michel M. Turpeau,* for appellants.
*Messrs. Rendigs, Fry & Kiely,* for appellee.

Fess, J. In their amended petition, the three plaintiffs—negro women—citizens of the United States and of Ohio, and residents of the city of Cincinnati, bring their action on behalf of themselves and all other persons similarly situated pursuant to Section 11257, General Code, against the defendant corporation, the proprietor and operator of Coney Island, a place of public amusement in Hamilton County, Ohio.

Plaintiffs allege that the defendant, on numerous occasions, refused admission to Coney Island to plaintiffs and other persons similarly situated, and thereby denied to the plaintiffs the full enjoyment of the accommodations and privileges of Coney Island.

Plaintiffs allege further that the defendant, through its agents, etc., in wilful violation of Sections 12940 and 12941, General Code, denied, and aided and incited others to deny, to plaintiffs the full enjoyment of the accommodations and privileges of Coney Island for reasons not applicable alike to all citizens and because of the color or race of the plaintiffs, notwithstanding the fact that plaintiffs applied for admission and tendered the admission price therefor.

Plaintiffs allege further that each of the three plaintiffs was denied admission upon certain specified dates and that other plaintiffs in the class they represent have been denied admission on innumerable occasions prior to and subsequent to such dates.

Plaintiffs allege further that as a result of the defendant's conduct, the named plaintiffs, and those in the class they represent, have been denied their rights as citizens of Ohio, have suffered embarrassment and humiliation and have incurred expense in their endeavor to exercise their rights denied them by the defendant. They allege further that the repeated violations of Sections 12940 and 12941, General Code, will

be continued unless defendant be enjoined from further violations, that plaintiffs will suffer irreparable harm by reason thereof, and that they have no adequate remedy at law.

Plaintiffs pray that the defendant, its agents, etc., be restrained from denying or aiding or inciting others to deny plaintiffs and the class they represent admission to Coney Island and the full enjoyment of the accommodations thereof because of their race or color, or for any reason not applicable alike to all citizens, and, generally, for other relief.

A demurrer to the amended petition, on the ground that it does not state facts which show a cause of action, was sustained "for the reason that said action was improperly brought under Section 11257, General Code." The plaintiffs not desiring to plead further, the action was dismissed. Plaintiffs appeal on questions of law.

In support of the judgment below, defendant asserts:

"1. The action is not a proper class suit.

"2. The statutory remedy is exclusive.

"3. The statutory remedy is adequate.

"4. The rules of statutory construction limit the remedy to that given in the statute."

The first question requires a review of the origin of Section 11257, General Code (Section 2307.21, Revised Code). Prior to the adoption of the New York Code of Civil Procedure, equity had developed the class suit as an exception to chancery rules of compulsory joinder, in order to enable the court to proceed to a decree where the number of necessary parties was so large that joinder of all as parties was inconvenient and impracticable. *Brown* v. *Vermuden* (1676), 22 Eng. Rep., 796; *City of London* v. *Richmond* (1701), 23 Eng. Rep.,

870; *Attorney General* v. *Jackson* (1805), 11 Ves. Jr., 365, footnote 1, p. 372; *Adair* v. *New River Co.* (1805), 11 Ves. Jr., 429; *Cockburn* v. *Thompson* (1809), 16 Ves. Jr., 321. Without this exception, a litigant would be defeated on the ground of nonjoinder of all necessary parties.

Prior to the enactment of the New York Code of Civil Procedure, the Code .Commissioners had reported a section providing that those who were *united in interest must* be joined as plaintiffs, with certain exceptions. But the Legislature apparently apprehended that by adopting the rule reported by the commission, it might be understood to have rejected the exception permitting class suits. To prevent this apprehension, Code No. 119 was added, thus retaining in the new practice the same rules by which to determine whether the proper parties were before the court, which then prevailed in chancery. *McKenzie* v. *L'Amoureux* (1851), 11 Barb., 516, 518.* The phraseology then employed in Section 119 of the New York Code was the same as that later enacted in the Ohio Code of Civil Procedure.

In the opinion in the *McKenzie case*, the court said:

"The section in question requires that, except in a specified case, all who are *united in interest* shall be joined as parties; and then declares that when the action involves a question of *common or general interest* to several parties, *or* when, though united in interest, the parties are very numerous and it is impracticable

---

*The New York Code Commissioners made their report in 1848. The Code containing the addition of Section 119 was enacted in 1849. The language appears to have been taken from Justice Story's Equity Pleading, second edition, published in 1840. Cf. *Platt* v. *Colvin*, 50 Ohio St., 703; *Flemming* v. *Mershon*, 36 Iowa, 413, 417; 30 Michigan Law Review, 878.

to bring them all before the court, then one or more may sue or defend for all."

In *Brenner* v. *Title Guarantee & Trust Co.* (1937), 276 N. Y., 230, 11 N. E. (2d), 890, 114 A. L. R., 1010, the court said:

"Its purpose was not to provide for the joinder in one action of separate causes of action owned by different plaintiffs. Its purpose was rather to retain 'in the new practice the same rules by which to determine whether the proper parties were before the court, which then prevailed in the court of chancery.'"

See, also, *Kahn* v. *New York Life Ins. Co.,* 184 Misc., 417, 53 N. Y. Supp. (2d), 575, 577; *Reinman* v. *Jaffe,* 116. N. Y. Supp. (2d), 366, 368.

Prior to the adoption of the Ohio Code of Civil Procedure, in *Smith* v. *Heuston* (1833), 6 Ohio, 101, 25 Am. Dec., 741, Wright, J., in the opinion, said:

"In another class of cases, where a great number are separately interested in the same subject, one or more, for convenience, and to prevent delay, may litigate the right in chancery, for himself and all others interested; and the court having the subject and the parties operating before it, will so control as to protect the rights of all concerned."

In *Armstrong* v. *Treasurer* (1840). 10 Ohio, 235, the Supreme Court recognized the principle but held that individuals who have no community of interest can not prosecute their several rights in one bill, stating:

"It is true they hold land derived from the same source and charged with a tax under similar circumstances. But still they hold in severalty separate parcels of land, each parcel charged with a separate amount of tax, and each parcel liable for the tax charged upon itself. Under these circumstances there is an improper joinder of parties * * *."

See, also, *State* v. *Ellis* (1841), 10 Ohio, 456.

In *Platt* v. *Colvin* (1893), 50 Ohio St., 703, 36 N. E., 735, the Supreme Court said:

"It was the general rule in chancery, before the adoption of the civil code, that suits must be prosecuted by the real parties in interest, and that all who were united in interest must be joined. There were, however, certain well-established exceptions to the rule, which, like the rule itself, were adopted for the convenient administration of justice. Among these exceptions, it is stated in Story's Equity Pleading, Section 97, were '(1) where the question is one of a common or general interest, and one or more sue, or defend, for the benefit of the whole: (2) where the parties form a voluntary association for public or private purposes, and those, who sue, or defend, may fairly be presumed to represent the rights and interests of the whole; (3) where the parties are very numerous, and although they have, or may have separate, distinct interests; yet it is impracticable to bring them all before the court.' In speaking of the second class of exceptions above mentioned, it is said that 'in cases of this sort the persons interested are commonly numerous, and any attempt to unite them all in the suit would be, even if practical, exceedingly inconvenient, and would subject the proceedings to danger of perpetual abatements, and other impediments, arising from intermediate deaths, or other accidents, or changes of interest. Under such circumstances, as there is a privity of interest, the court will allow a bill to be brought by some of the parties in behalf of themselves and all the others, taking care, that there shall be a due representation of all substantial interests before the court.' So that, the principle upon which that class of exceptions rested, is not different in substance, from that of

the last class mentioned, namely, that the parties are numerous, and it is impracticable, in the convenient and speedy administration of justice, to have them all before the court; and the courts in many adjudged cases appear to have so regarded it. By reference to some of the cases it will be seen how the exceptions were applied in practice, and when it was deemed, by the courts, impractical to bring all of the parties, when numerous, before the court.''

The court then commented on *Taylor* v. *Salmon,* 4 M. & C. (18 Eng. Ch. R.), 134, and *Walworth* v. *Holt,* 4 M. & C. (18 Eng. Ch. R.), 619 (shareholders actions); *Small* v. *Atwood,* 1 Younge's R., 407 (copartners); and *Chancey* v. *May,* Prec. in Ch. (Finch's Chan. Cas.), 592 (members of an association) and said:

''There are many English and American cases of like character. Those already adverted to, sufficiently show the nature of the exceptions which obtained in chancery, to the general rule in regard to parties, the principle upon which they were based, and the manner of their practical application. The rule, and its exceptions, in their breadth and substance, were adopted into our Code (Sections 4993, 5007 and 5008, Revised Statutes), and, by its provisions made applicable to the civil action which it substituted for what was theretofore known as the suit in equity, and the action at law.''

It is therefore apparent that Section 11257, General Code, should be construed in the light of the purpose of its enactment in 1853, and also *in pari materia* with Sections 11254 and 11256, General Code.

It may be observed that in *Smith* v. *Kroeger, Supt.,* 138 Ohio St., 508, 37 N. E. (2d), 45, the Supreme Court indicated that an action brought on behalf of the stockholders of a building and loan association was proper-

ly brought as a class suit under or *independent* of Section 11257, General Code. Cf. *Jensen* v. *Republic Steel Corp.*, 32 Ohio Law Abs., 29, 53.

The word, "question," in Section 11257, General Code, is synonymous with the phrase, "subject of the action," in Section 11254, General Code. *Quinlan, Aud.,* v. *Myers,* 29 Ohio St., 500, 508; *Haggerty* v. *Squire, Supt.,* 137 Ohio St., 207, 28 N. E. (2d), 554; *Wheatley, Trustee,* v. *A. I. Root Co.,* 147 Ohio St., 127, 69 N. E. (2d), 187; *Davies* v. *Columbia Gas & Elec. Corp.,* 151 Ohio St., 417, 86 N. E. (2d), 603.

It has been said that in order for one to bring an action for the benefit of himself and others, there must be a community of interest plus a right of recovery based upon the same essential facts, and that all those on whose behalf the suit is brought must have an interest common or identical with that of the named plaintiff. *Davies* v. *Columbia Gas & Elec. Corp., supra.* There must be a community of interest as well as a right of recovery by reason of the same essential facts, *Stevens* v. *Cincinnati Times-Star Co.,* 72 Ohio St., 112, 155, 73 N. E., 1058, 106 Am. St. Rep., 586, and the claim asserted must "arise from a common source and represent a like interest." *Haggerty* v. *Squire, supra;* *Wheatley, Trustee,* v. *A. I. Root Co., supra.* But it must be borne in mind that the provisions of Section 11257, General Code, are an exception to the provisions of Sections 11254 to 11256, General Code, applying to joinder of parties. In *Davies* v. *Columbia Gas & Elec. Co.,* the Court of Appeals stated "we are of the opinion that a compliance with the joinder statutes (11254-11256) is not required in order to maintain a class suit under the provisions of 11257." But the Supreme Court rejected this conclusion and construed the class suit as an exception to the requirement of actual joinder, justified by the impracticability of mak-

ing numerous persons actual parties to the action. Each of the parties sought to be represented must have "an interest in the subject of the action, and in obtaining the relief demanded" or must be "united in interest" with the plaintiff.*

The "common" or "general interest" referred to in Section 11257, General Code, is an "interest in the subject of the action, and in obtaining the relief demanded" as used in Section 11254, General Code, relating to permissive joinder. Parties represented in a class suit under Section 11257, General Code, must be such persons as may be joined under Section 11254. Mere community of interest in the issues of law and fact involved is not sufficient. *Trustees* v. *Thoman,* 51 Ohio St., 285, 37 N. E., 285; *Duncan* v. *Willis,* 51 Ohio St., 433, 38 N. E., 13; *Stevens* v. *Cincinnati Times-Star Co., supra*; *Meeker* v. *Scudder,* 108 Ohio St., 423, 140 N. E., 627; *Davies* v. *Columbia Gas & Elec. Corp., supra.* The decisions in *Alcorn* v. *Barrett* (Common Pleas, 1936), 22 Ohio Law Abs., 369, and *Weinreich* v. *Permanent Bldg. & Sav. Assn.* (Ohio App., 1937), 26 Ohio Law Abs., 545, are not in accord with the decisions of the Supreme Court.

The three plaintiffs herein obviously have a sympa-

*In *Weaver* v. *Pasadena Tournament of Roses,* 32 Cal. (2d), 833, 198 P. (2d), 514, the California Supreme Court has recently held that the fact that numerous parties have separate and distinct claims against the same person will not alone suffice to sustain a representative suit, but also held that the parties sought to be represented need not be so united in interest with the actual plaintiff as to make them *necessary* parties.

In *Meeker* v. *Scudder,* 108 Ohio St., 423, the Supreme Court held that applicants for a license to practice medicine under the laws of Ohio must stand upon their individual rights and qualifications and they may not join for the purpose of instituting a class suit to determine the unconstitutionality of the statute. Here the plaintiffs had a community of interest in a common question of law, but could not join as individuals asserting their respective rights.

thetic interest in each other's cause of action, but neither has any legal interest in the relief sought by each other. A common and important question of law is presented by each of the plaintiffs in which they have a community of interest, but their respective causes of action are separate and distinct. Section 11254, General Code, provides that all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs except as otherwise provided. Neither of the plaintiffs have any interest in the "subject of the action" of the other. The subject of the action in each case is the exclusion of each plaintiff from the premises of the defendant. There is not such a community of interest and right of recovery based upon the same facts between the plaintiffs and those they seek to represent as will permit joinder over objection. *Bartges* v. *O'Neil*, 13 Ohio St., 72; *Masters* v. *Freeman*, 17 Ohio St., 323; *Duncan* v *Willis, supra*; *Taylor* v. *Brown*, 92 Ohio St., 287, 110 N. E., 739; *Miller* v. *City of Cincinnati*, 70 Ohio App., 99, 42 N. E. (2d), 909 (action to enjoin an assessment); *Ulmer* v. *Squire, Supt.*, 71 Ohio App., 369, 50 N. E. (2d), 178. For example, suppose the plaintiffs herein should fail to establish their right to relief. Certainly such determination would not thereafter bar an action brought by any member of the class sought to be represented. Nor could a decision favorable or adverse determine the rights of any of the unnamed persons whom they seek to represent.*

In the Ohio cases denying the right to file a class action, a general community of interest was present, but those on whose behalf the action was brought did not have a legal interest common or identical with that of the person in whose name the suit was brought.

---

*For an interesting discussion of *res judicata* as a result of judgments in class actions, see 33 Cornell Law Quarterly, 327.

It is recognized that the conclusion herein reached is not in accord with the more liberal provisions of the federal rules of procedure which provide that one or more can sue for all, when the character of the right sought to be enforced for or against the class is several, and there is a common question of law and fact affecting the several rights and common relief is sought. Cf. *Kansas City* v. *Williams,* 205 F. (2d), 47; *Williams* v. *Kansas City,* 104 F. Supp., 848; *Lopez* v. *Seccombe,* 71 F. Supp., 769, referred to in *Westminster School Dist.* v. *Mendez,* 161 F. (2d), 774, 782.*

Nor is it in accord with the modern practice in New York. Section 212 of the New York Civil Practice Act permits joinder of all persons in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them would arise in the action. It shall not be necessary that each plaintiff shall be interested in obtaining, or each defendant be interested in defending against, all the relief demanded, or as to every cause of action included in any proceeding. The conclusion does comport with the interpretation of Section 11257, General Code, consistently followed by the Supreme Court of Ohio in the citations referred to above and more recently in *State, ex rel. Gerspacher,* v. *Coffinberry et al., Indus. Comm.,* 157 Ohio St., 32, 104 N. E. (2d), 1, and *Masetta* v. *National Bronze & Aluminum Foundry Co.,* 159 Ohio St., 306, 112 N. E. (2d), 15, reversing 62 Ohio Law Abs., 374. The demurrer was, therefore, properly sustained upon the ground of misjoinder of parties plaintiff.

---

*As indicative of the confusion which has arisen under Federal Rule 23, see 46 Columbia Law Review, 818.

Does the Ohio Civil Rights Act afford the plaintiffs an adequate remedy at law?

In support of the judgment below, defendant, appellee herein, asserts that the provisions of the Ohio Civil Rights Act, Sections 12940 to 12942, General Code (Sections 2901.35 and 2901.36, Revised Code), provide an adequate and exclusive remedy at law. The Fourteenth Amendment to the Constitution of the United States, prohibiting the states from abridging the privileges and immunities of citizens of the United States, was ratified in 1868. Prior to the ratification of the federal civil rights amendments, the control of civil rights was exclusively within the domain of the several states, with certain exceptions provided in the federal Constitution. However, the guaranties of the Fourteenth Amendment relate only to action by a state and not to any action of private individuals. It does not deal with the invasion of individual rights by individuals. Hence, there is no authority under that amendment for an act of Congress designed to secure to all persons within the United States full and equal accommodations in public places without distinction because of race. 10 American Jurisprudence, 900, Section 7. The petition in the instant case is, therefore, brought under the provisions of the Ohio Civil Rights Act (81 Ohio Laws, 15), first enacted in 1884. As originally enacted, section one provided that all persons within the jurisdiction of the state should be entitled to the full and equal enjoyment of the accomodations, etc., in certain places open to the public, subject only to conditions and limitations established by law, and applicable alike to citizens of every race and color. Section 2 provided for a civil penalty and also a fine or imprisonment. When the Revised Statutes were codified in 1910, Sections 1 and 2 of the Civil Rights Act were rephrased by eliminating the positive statement

granting equal rights, and substituting therefor the present phraseology that whoever should deny full enjoyment of the accommodations, etc., shall be fined, etc. Recovery of the civil penalty was provided in Section 12941, General Code. Under the established principle of statutory construction, the rearrangement of the phraseology in the 1910 revision is presumed to bear the same meaning and confer the same rights as the original sections, unless it appears that a change of more than the phraseology or mere rearrangement of the language was intended by the Legislature in enacting the revision. Since it is not clear that the Legislature intended to make a substantial change in the 1910 revision, the Code sections must be construed in the light of the original law. *Ramon* v. *Spike*, 92 Ohio App., 49, 109 N. E. (2d), 327. As above indicated, prior to 1884 no person previously denied the privileges granted in the act had any right of action for relief, but there is nothing in the act to disclose that it was intended by the Legislature to make the criminal and civil penalties either an adequate or exclusive remedy for one denied his civil rights.

In *Tate* v. *Eidelman* (1934), 32 N. P. (N. S.), 478, the Common Pleas Court of Mahoning County sustained a demurrer to a petition seeking an injunction under the Civil Rights Act on the ground that the jurisdiction of equity does not extend to a matter affecting an exclusive personal right, citing as authority *Snedaker* v. *King*, 111 Ohio St., 225, 145 N. E., 15. The *Snedaker* case was a four to two decision, but it has not been overruled or modified. Throughout the United States, the general trend of recent cases has recognized as a principle that equity jurisdiction exists and will be exercised in appropriate instances for the protection of personal rights and that equity is not limited to situations in which a property right is involved. 175

A. L. R., 442. The rule announced in the *Snedaker case* in a *per curiam* opinion should therefore be applied only to actions to enjoin alienation of affections. The federal civil rights act, in terms, confers equitable jurisdiction so that cases arising under that act are to be distinguished.

Although unanimity of opinion is lacking, some states recognize injunction as among the remedies existing for the implementation of civil rights. *Arloff* v. *Los Angeles Turf Club,* 30 Cal. (2d), 110, 180 P. (2d), 321, 171 A. L. R., 713, and cases noted in 171 A. L. R., 926. Other courts have denied equitable relief, not necessarily upon the ground of nonprotection of a personal right but on the basis that the asserted right had no legal standing, either at common law or by the statute. *Madden* v. *Queens County Jockey Club,* 296 N. Y., 249, 72 N. E. (2d), 697; *Greenfield* v. *Maryland Jockey Club,* 57 A. (2d), 335; *Neff* v. *Boomer* (Neb.), 31 N. W. (2d), 222. Cf. 175 A. L. R., 477.

In *Gillespie* v. *Lake Shore Golf Club,* 56 Ohio Law Abs., 222, 91 N. E. (2d), 290, upon a trial *de novo,* the Court of Appeals for Cuyahoga County granted an injunction, but no jurisdictional question was raised. In *Culver* v. *City of Warren,* 84 Ohio App., 373, 83 N. E. (2d), 82, the same court, sitting by designation in another appellate district, upon trial *de novo,* entered a declaratory judgment and granted an injunction. This case arose, however, under the Fourteenth Amendment.

We concur, however, with the pronouncement of the Court in *Kenyon* v. *City of Chicopee,* 320 Mass., 528, 70 N. E. (2d), 241, 175 A. L. R., 430, that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights. In the instant case, the plaintiffs set up a right given them under the law of Ohio and the deprivation

thereof by a continued course of conduct on the part of the defendant. Upon the face of the petition, it appears that a substantial right of the plaintiffs will be impaired to a material degree unless relief be granted and that the remedy at law is inadequate.

Upon the sustaining of a demurrer on the ground of misjoinder of parties, an order of severance, if requested, should be ordered. However, no such request was made in the instant case and plaintiffs elected not to plead further and the petition was dismissed.

Without prejudice to the rights of the several plaintiffs to separately prosecute in equity their several causes of action, the judgment of the Common Pleas Court is affirmed on the ground of misjoinder of parties.

*Judgment affirmed.*

CONN, J., concurs.

DEEDS, J., dissenting. It is my view that the action involved on this appeal was properly brought as a class suit and I, therefore, do not concur in the decision of the majority of the court on that issue.

The suit was for an injunction, seeking to enjoin the defendant amusement company from denying to the plaintiffs and the negro citizens similarly situated, on the sole ground that they are negroes, the exercise of their right as such citizens to visit the public amusement park operated by the defendant as provided by Section 2901.35, Revised Code (formerly Section 12940, General Code).

An analysis of the allegations of the amended petition discloses that the plaintiffs, and the class represented by them, charge the deprivation of a right common alike to all of them as negro citizens and all seek the same equitable remedy in a single proceeding, for

the reason that the persons aggrieved by the illegal action of the defendant are very numerous and it would be impracticable to bring them all before the court.

It seems clear to me that the plaintiffs and those they undertake to represent in the case come within the requirements of the law governing the right to maintain class actions, as interpreted and announced by the Supreme Court in *Wheatley, Trustee,* v. *A. I. Root Co.,* 147 Ohio St., 127, 69 N. E. (2d), 187, the law applicable being stated in the fifth paragraph of the syllabus as follows:

"Where a number of persons have separate and individual claims and rights of action against the same party, but all such claims arise from a common source and represent a like interest, the whole matter may be litigated in a single action brought by all of the claimants as coplaintiffs, or, in case the parties are numerous making it impracticable to bring them all before the court, by one or more of them suing for himself or themselves and on behalf of the other claimants. (Paragraph two of the syllabus in *Haggerty* v. *Squire, Supt. of Banks,* 137 Ohio St., 207, approved and followed.)"

The question of the right to maintain a class or representative action under the provisions of Section 2307.21, Revised Code (formerly Section 11257, General Code), was again considered by the Supreme Court in *Davies* v. *Columbia Gas & Elec. Corp.,* 151 Ohio St., 417, 86 N. E. (2d), 603. In the opinion of the court by Judge Zimmerman, a clear, comprehensive statement concerning the conditions requisite for the right to maintain class actions is made, which, it seems to me, when applied to the facts alleged in the amended petition in the case being considered, requires a determination sanctioning the maintenance of the proceeding as a representative action.

---

The statement of Judge Zimmerman in the *Davies case, supra,* pages 420 and 421, containing an analysis of the Code provision pertinent here, together with the citation of prior decisions of the court involving the question, is as follows:

"There are three General Code sections relating to class suits, which should be considered together in disposing of the question whether the amended petition presents a cognizable class suit.

"Section 11254 provides:

" 'All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs except as otherwise provided.'

"Section 11256 reads, in part:

" 'Parties who are united in interest must be joined, as plaintiffs or defendants.'

"Section 11257, recites:

" 'When the question is one of a common or general interest of many persons, or the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.'

"Under the statutes quoted, for one to properly institute an action for the benefit of himself and others, there must be a community of interest plus a right of recovery based upon the same essential facts, and all those on whose behalf the suit is filed must have an interest common or identical with that of the person in whose name the action is brought. *Trustees of Jackson Twp.* v. *Thoman,* 51 Ohio St., 285, 37 N. E., 523; *Duncan* v. *Willis,* 51 Ohio St., 433, 38 N. E., 13; *Stevens* v. *Cincinnati Times-Star Co.,* 72 Ohio St., 112, 73 N. E., 1058, 106 Am. St. Rep., 586; 30 Ohio Jurisprudence, 741, Section 28.

"In the later cases of *Haggerty* v. *Squire, Supt. of Banks,* 137 Ohio St., 207, 28 N. E. (2d), 554, and *Wheat-*

*ley, Trustee,* v. *A. 1. Root Co.,* 147 Ohio St., 127, 69 N. E. (2d), 187, wherein the propriety of class suits was recognized and wherein the relief sought was primarily of an equitable nature, this court adhered to the rule that in order to prosecute a class suit, the claims asserted must 'arise from a common source and represent a like interest.'

"It will be noticed that in both the *Haggerty* and *Wheatley cases* the respective plaintiffs and those they undertook to represent were affected in a similar manner and under like conditions and that the character of the relief which each member of the class represented might obtain was confined to what was asked for in the petitions."

In the case before us, the plaintiffs are not undertaking to represent all the negroes residing in Hamilton County but are seeking equitable relief in the form of an injunction for only those negro citizens who desire to visit the public amusement park operated by the defendant and who would otherwise be refused admittance by the defendant on the sole ground that they are negroes.

Therefore, it appears that all of the negro citizens for whom the equitable relief is sought have an interest which is unquestionably a common interest and that they are very numerous, which makes it impracticable to bring them all before the court; that the same remedy, if and when granted, would afford a redress of their grievances individually and as a class in the single action.

Therefore, considering as I do that according to the allegations of the amended petition the plaintiffs and the class they represent are without an adequate remedy at law and that those necessary conditions for class actions are present in this case, I am of the opinion that the judgment of the Court of Common Pleas

in sustaining the demurrer to and dismissing the amended petition was contrary to law, and that such judgment should therefore be reversed and the cause remanded to that court for further proceedings.

FESS, CONN and DEEDS, JJ., of the Sixth Appellate District, sitting by designation in the First Appellate District.